No. 03-094

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 4

PAUL PARPART,

        Plaintiff and Appellant,

   v.

STATE OF MONTANA, DEPARTMENT OF
JUSTICE, MOTOR VEHICLE DIVISION, and
THE CHIEF OF THE RECORDS AND
DRIVER CONTROL BUREAU,

        Defendants and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. DVA-2002-256,
                  Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Kelly J. Varnes, Hendrickson, Everson, Noennig & Woodward, P.C.,
                Billings, Montana

        For Respondents:

                Honorable Mike McGrath, Attorney General; Brenda Nordlund,
                Assistant Attorney General, Helena, Montana

Submitted on Briefs:  August 14, 2003

Decided:  January 20, 2004

Filed:

_____
                       Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Paul Parpart (Parpart) appeals from a grant of summary judgment in the First Judicial District, Lewis and Clark County. We affirm in part and reverse in part.

¶2      We restate the issue on appeal as:

¶3      Whether the District Court erred when it denied Parpart's challenge to the constitutionality of the initial ten-year driver's license suspension by the Thirteenth Judicial District, Yellowstone County, and two subsequent ten-year suspensions by the Department of Justice, Motor Vehicle Division.

## FACTUAL and PROCEDURAL BACKGROUND

¶4      Parpart was involved in a fatal car accident and was convicted of negligent homicide and negligent vehicular assault in March of 1994 in the Thirteenth Judicial District Court, Yellowstone County. For the first offense, the District Court sentenced Parpart to two years at a Montana state prison followed by eight years placement in an appropriate program, facility or state correctional institution. For the latter offense, Parpart was sentenced to one year in a Montana state prison to be served concurrently with the aforementioned sentence. Additionally, Parpart's driver's license was suspended "for the entire ten year period" according to the District Court's oral pronouncement. Thereafter, the District Court altered the judgment and commitment four times, correcting and changing the incarceration portion of the sentence and granting and later revoking a conditional license for work purposes. In all other respects, including the driver's license revocation, the order was unchanged.

2

¶5     In November of 1999 Parpart's sentence was discharged; he was under no requirement to report to any probation office, any court, or any other official of the State of Montana. Thereafter, in February of 2000, Parpart filed a motion with the District Court for an order reinstating his driver's license on the basis that he had served his sentence and had been discharged. The Court, referring to the initial 1994 suspension, stated: "I said 'ten years,' and that's what I meant." The motion for reinstatement was denied. The following year, Parpart was twice convicted of driving while his driver's license was suspended. The Department of Justice, Motor Vehicle Division (the Department), assumed that Parpart's 1994 sentence suspending his driver's license for ten years extended through 2004 and that any subsequent violations required a continuation for a "like period," i.e. another ten years under § 61-5-212(2), MCA (1999). Therefore, Parpart's driver's license suspension was extended first, until March 15, 2014, and then until March 15, 2024.

¶6     Parpart filed an action in April of 2002, in the First Judicial District, Lewis and Clark County, claiming that the initial and subsequent revocations of his driver's license were unconstitutional, and that he was deprived of his rights under 42 U.S.C. § 1983. The Department moved to dismiss Parpart's complaint for failure to state a claim or alternatively, to order Parpart to file a more definite statement of the claims being made. Both parties then filed cross-motions for summary judgment. Before a hearing on the cross-motions was held, Parpart amended his complaint alleging that the initial and subsequent ten-year suspensions violated his rights to equal protection and due process and deprived him of full restoration

3

of his rights under the Montana Constitution.  The District Court granted the Department's motion for summary judgment.  Parpart appeals from that decision.

## STANDARD OF REVIEW

¶7 Our standard of review in appeals from summary judgment rulings is *de novo*. *Motarie v. Northern Mt. Joint Refuse Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156 (citing *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785).  When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P.  *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## DISCUSSION

¶8 *Whether the District Court erred when it denied Parpart's challenge to the constitutionality of the initial ten-year driver's license suspension by the Thirteenth Judicial District, Yellowstone County, and two subsequent ten-year suspensions by the Department.*

¶9 Parpart argues that the District Court did not have the authority to impose a ten-year driver's license suspension in 1994 and, even assuming that it could impose a ten-year suspension under § 46-18-202(1)(e), MCA (1991), he discharged his sentence in 1999 and any "conditions" of the sentence terminated as of that date.  The State concedes that Parpart discharged his sentence in 1999 but contends that the ten-year suspension remained intact as a stand alone sentence.

¶10 Section 46-18-202(1)(e), MCA (1991), provides that a district court may impose "restrictions or conditions on the sentence."  Those restrictions or conditions include "any other limitations reasonably related to the objectives of rehabilitation and the protection of

4

society." Thus, the Thirteenth Judicial District Court had the authority to impose the ten-year driver's license suspension, but the suspension was imposed as a condition or restriction on the sentence and, once Parpart's "sentence" was discharged in 1999, the driver's license suspension was discharged as well. The State's argument that the suspension remained intact as a stand alone sentence is unpersuasive. Since the driver's license suspension was discharged in 1999, we need not, despite the dissent's protestations, address the question of whether the suspension was constitutional, as it is now moot.

¶11 The discharge of the initial suspension, however, necessarily gives rise to an additional issue because the Thirteenth Judicial District Court erroneously denied Parpart's motion to have his driver's license reinstated in February of 2000, and Parpart was subsequently cited for driving without a license later that same year and also in 2001. Not realizing that the initial ten-year suspension had been discharged, the Department suspended Parpart's license for two additional "like period[s]" of ten years each–until 2014 and 2024. Section 61-5-212(2), MCA (1999). While Parpart was eligible to have his license reinstated in 2000, he should have appealed the Thirteenth Judicial District Court's denial instead of disregarding it and driving without a license. The Department was correct in suspending Parpart's driver's license; however, because Parpart's sentence had been discharged, the Department's authority to suspend his license was limited to one year. Section 61-5-208(1), MCA, reads that "[t]he department may not revoke or suspend a driver's license . . . for a period of more than 1 year." Consequently, Parpart's two one-year suspension periods

5

would have ended in 2002.  Parpart is thus entitled to have his driving privileges restored upon compliance with § 61-5-218, MCA.

¶12     We affirm the District Court's holding that the Department had the authority to suspend Parpart's driver's license in 2001.  However, we reverse the District Court's holding that the Department had the authority to suspend Parpart's license for twenty years.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM REGNIER
/S/ JIM RICE

Chief Justice Karla M. Gray, dissenting.

¶13    I respectfully dissent from the Court's opinion and the results reached therein.  I would affirm the District Court's determination that no constitutional violations occurred.

¶14    I agree with the Court that the issue before us is "[w]hether the District Court erred when it denied Parpart's challenge to the constitutionality of the initial ten-year driver's license suspension by the Thirteenth Judicial District, Yellowstone County, and two subsequent ten-year suspensions by the Department of Justice, Motor Vehicle Division."  I am altogether puzzled by the remainder of the Court's opinion, however.  The Court's discussion and analysis is totally statutory; the stated constitutional issue is never resolved.  Not a single word of constitutional analysis is presented which agrees or disagrees with the District Court's conclusion that no constitutional violation occurred.

¶15    I raise this problem because, on the procedural facts of this case, it is my view that only the constitutional issue is properly before us; consequently, only a constitutional analysis can resolve the case.  The reason is that Parpart did not appeal the Thirteenth Judicial District Court's denial--in 2000--of his motion for an order reinstating his driver's license on the basis that he had served his sentence and been discharged.  Nor did he timely appeal from--or bring any action relating to--the Department's subsequent revocations in 2000 and 2001.  In such direct appeals, the Court properly could--and would--have performed the statutory analysis set forth in the Court's opinion here.

¶16    In the present case, however, Parpart's action in the First Judicial District Court asserted that the initial and subsequent revocations of his driver's license were unconstitu-

7

tional on due process, equal protection and restoration of rights bases. Parpart sought to have the revocations rescinded, not merely to have the District Court disagree with the Thirteenth Judicial District Court's decisions of years ago. The First Judicial District Court rejected the constitutional arguments, determining that no constitutional violations occurred. The resolution of this appeal, from that decision, cannot properly be premised on a statutory analysis which Parpart waived by not appealing the earlier actions of the Thirteenth Judicial District Court.

¶17 By its opinion in this case, I believe the Court undercuts the importance of the direct appeal process on which our system of justice is based, and dispenses with the requirement that issues not raised on appeal are waived. I simply cannot follow that path.

¶18 Absent a constitutional basis for reversing the District Court on a constitutional issue, it is my view that we cannot at this time undo what has been done, and must affirm the trial court. I would do so.


/S/ KARLA M. GRAY


Justice James C. Nelson joins in the foregoing dissenting opinion.


/S/ JAMES C. NELSON

8