FILED

04/11/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0261

DA 21-0261

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 64

IN THE MATTER OF:

J.D.L.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DI 21-5
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Kathryn Hutchison, Assistant Appellate
            Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Christine Hutchison,
            Assistant Attorney General, Helena, Montana

            James Lapotka, Lake County Attorney, Polson, Montana

                      Submitted on Briefs:  February 8, 2023

                                Decided:  April 11, 2023

Filed:

                      _____
                              Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Respondent and Appellant J.D.L. appeals from the oral pronouncement of March 31, 2021, waiving J.D.L.'s right to be physically present at his commitment hearing and the April 4, 2021 Findings of Fact, Conclusions of Law and Order of Commitment issued by the Twentieth Judicial District Court, Lake County. We reverse.

¶2 We address the following issue on appeal:

*Did the District Court commit reversible error by requiring J.D.L. to attend, over objection, his own commitment hearing via two-way electronic audio-video communication?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The parties generally agree as to the factual and procedural background of this case. On March 26, 2021, the State filed a petition for involuntary commitment of J.D.L., supported by the mental health evaluation conducted by Dr. River, and J.D.L. was present in court for his initial hearing on that same date. At the initial hearing, J.D.L. advised the District Court he desired to be present in-person at the commitment hearing which was scheduled for March 31, 2021. No friend of respondent was appointed. As no local placement was available, J.D.L. was transported to the Montana State Hospital (MSH) pending hearing on the petition and the District Court assured J.D.L. he would be transported back to court for the commitment hearing.

¶4 At the time of the commitment hearing, J.D.L.'s attorney represented that due to J.D.L.'s behavior over the preceding 24 hours, counsel wished to waive J.D.L.'s in-person appearance and instead have J.D.L. appear via two-way video conferencing. J.D.L. made it clear he wished to appear in-person and not via video. J.D.L.'s counsel advised the

2

District Court that, pursuant to *In re C.R.C.*, 2009 MT 125, 350 Mont. 211, 207 P.3d 289, in the event a client is not lucid, the client's attorney can make the decision to waive the right to an in-person hearing to protect the client from safety concerns. J.D.L.'s counsel then advised to avoid putting J.D.L.'s safety in jeopardy she had requested he remain at MSH and she was waiving his in-person appearance. J.D.L., however, persisted in his desire to be physically present in the courtroom for the hearing. The District Court then proceeded to permit J.D.L.'s counsel to present evidence to support the waiver of J.D.L.'s personal appearance. J.D.L.'s counsel called Dr. River, the appointed mental health professional, to testify. Dr. River testified that, during his initial evaluation, J.D.L. had become enraged and threatening and threw himself against the barred door of the cell when he had called J.D.L. by his given name.[1] Dr. River also testified[2] that after J.D.L. arrived at MSH, J.D.L. had been violent with staff when they held him down to involuntarily administer anti-psychotic medication by injection, requiring staff to restrain J.D.L.[3] When asked about risk of injury while being restrained, Dr. River responded, "[t]he risk of injury when he's in the restraints is minimal as far as I understand." J.D.L.'s counsel then called

[1] J.D.L. has repeatedly expressed he desires to be called by the name of M.H. and has become agitated when this does not occur.

[2] Initially, during Dr. River's testimony, J.D.L. desired to leave the room and not participate further. The District Court did not permit this, explained the importance of his participation with the hearing, and advised J.D.L. he needed to remain. J.D.L. remained and was able to conduct himself appropriately without becoming aggressive or violent.

[3] Dr. River was not present and did not personally observe this incident at MSH, but related the facts of the incident as he understood them from what staff at MSH had told him. No person who had personally observed the incident testified.

Officer John Todd, the Lake County Sherriff's officer in charge of coordinating transports. Officer Todd testified there was concern in transporting J.D.L. because of the incident at MSH to which Dr. River had testified. When his transport officer arrived to MSH, the officer was informed J.D.L. was having a rather difficult day. The transport officer had called him, and he in turn brought it to the attention of J.D.L.'s counsel. Officer Todd agreed with J.D.L.'s counsel that J.D.L. would have had to be restrained during transport had he been transported back for the commitment hearing. Officer Todd did not testify as to any particular safety concerns or issues existing with transporting J.D.L. with restraints. The State did not cross-examine either Dr. River or Officer Todd, did not offer any evidence during hearing on the waiver issue, and did not assert any basis for waiving J.D.L.'s right to be physically present at the hearing.

¶5 The District Court then granted the request made by J.D.L.'s counsel to waive J.D.L.'s personal appearance and permit him to appear via two-way video communication at his commitment hearing. Following completion of the hearing, the District Court found, based primarily on the report of Dr. River, that J.D.L. suffered from schizophrenia and an unspecified personality disorder with anti-social personality traits, had a history of 13 prior commitments, was unable to care for himself and an imminent threat of harm to himself and others, committed J.D.L. to the MSH, and authorized the use of involuntary medication, if necessary.

**STANDARD OF REVIEW**

¶6 Due process claims in a civil commitment proceeding are subject to plenary review. *In re J.S.*, 2017 MT 214, ¶ 9, 388 Mont. 397, 401 P.3d 197 (citing *In re T.M.*, 2004 MT

4

221, ¶ 7, 322 Mont. 394, 96 P.3d 1147).  We review a district court's civil commitment order to determine whether its findings of fact are clearly erroneous and whether its conclusions of law are correct.  *In re F.S.*, 2021 MT 262, ¶ 6, 406 Mont. 1, 496 P.3d 958 (citing *In re B.H.*, 2018 MT 282, ¶ 9, 393 Mont. 352, 430 P.3d 1006).  A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that a mistake has been made after reviewing the entire record.  *In re A.M.*, 2014 MT 221, ¶ 8, 376 Mont. 226, 332 P.3d 263.  We review de novo questions of law as to whether the district court correctly interpreted and applied the law correctly.  *In re N.A.*, 2021 MT 228, ¶ 8, 405 Mont. 277, 495 P.3d 45.

## DISCUSSION

¶7    *Did the District Court commit reversible error by requiring J.D.L. to attend, over objection, his own commitment hearing via two-way electronic audio-video communication?*

¶8    J.D.L. appeals only the District Court's determination waiving J.D.L.'s right to in-person appearance at his commitment hearing based on his counsel's waiver of that right.  J.D.L. asserts that under Montana's civil commitment statutes, there are two narrow exceptions to the requirement a person be present at his own commitment hearing—one guiding the use of audio-video communication and the other defining a narrow third-party waiver—neither of which permitted waiver of J.D.L.'s right to physical appearance in this instance.  The State asserts J.D.L. forfeited his right to be present at his commitment hearing due to his violent behavior towards Dr. River and MSH staff.  The State asserts there was no safe option that would permit J.D.L. to attend the hearing in person and faced

5

with a Hobson's choice, the District Court's decision to waive J.D.L.'s personal appearance was appropriate.[4]

¶9 Civil commitments in Montana are governed by Title 53, chapter 21, MCA. Montana's civil commitment statutes provide in §§ 53-21-115(2) and -116, MCA, the right to be present at any hearing. Further, Montana's civil commitment statutes provide for the waiver of the right to be physically present at a hearing:

> (1) A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of respondent, if a friend of respondent is appointed, acting together if a record is made of the reasons for the waiver. The right to counsel may not be waived. The right to treatment provided for in this part may not be waived.
>
> (2) The right of the respondent to be physically present at a hearing may also be waived by the respondent's attorney and the friend of respondent with the concurrence of the professional person and the judge upon a finding supported by facts that:
>
> (a)
>
> (i) the presence of the respondent at the hearing would be likely to seriously adversely affect the respondent's mental condition; and
>
> (ii) an alternative location for the hearing in surroundings familiar to the respondent would not prevent the adverse effects on the respondent's mental condition; or
>
> (b) the respondent has voluntarily expressed a desire to waive the respondent's presence at the hearing.

---

[4] Although we reverse, we do commend the District Court for its professionalism and compassionate demeanor at both the initial and commitment hearings.

Section 53-21-119, MCA. Although § 53-21-140(3), MCA, permits courts to conduct various hearings, including commitment hearings, through two-way electronic audio-visual communication, as provided in § 53-21-140(5)(b), MCA, such may not be used to conduct a commitment hearing if the respondent, respondent's counsel, or the professional person objects. We require strict adherence to the statutory scheme governing involuntary commitment due to the critical importance of the constitutional rights at stake. *In re S.E.*, 2022 MT 205, ¶ 18, 410 Mont. 345, 519 P.3d 11; *In re R.W.K.*, 2013 MT 54, ¶ 18, 369 Mont. 193, 297 P.3d 318 (citations omitted).

¶10 Pursuant to § 53-21-119(1), MCA, J.D.L. could have validly waived his right to be physically present at his commitment hearing in two ways: (1) if J.D.L. was capable of making an intentional and knowing decision, J.D.L. could have waived his own right to be physically present; or (2) if J.D.L. was not capable of making an intentional and knowing decision, that right could have been waived by J.D.L.'s counsel and appointed friend acting together if a record was made of the reasons for the waiver. *In re R.W.K.*, ¶ 21.[5] Pursuant to § 53-21-119(2), MCA, J.D.L.'s right to be physically present at his commitment hearing could have also been validly waived by J.D.L.'s counsel and appointed friend acting together, with the concurrence of the professional person and the judge, if J.D.L.'s presence "would be likely to seriously adversely affect his mental condition" and an alternate hearing location would not prevent the adverse effects on his mental condition. It is

---

[5] There was no evidence that J.D.L. was not capable of making an intentional and knowing decision.

undisputed that J.D.L. did not personally waive his right to appear pursuant to § 53-21-119(1), MCA. No friend of respondent was appointed and J.D.L.'s counsel was not authorized under § 53-21-119(2), MCA, to unilaterally waive J.D.L.'s right to appear in person at his commitment hearing.

¶11 From our review of the record, the District Court, at least in part, relied on *In re C.R.C.*, which J.D.L.'s counsel advocated provided that, in the event a client is not lucid, the client's attorney "can make the decision to waive the right to an in-person hearing." To the extent the District Court relied on these representations of J.D.L.'s counsel, such reliance was misplaced. To the extent the District Court otherwise interpreted *In re C.R.C.* to permit a respondent's counsel the unilateral right to waive a respondent's right to physical presence at hearing, so long as a record is made of the reasons for waiver, such interpretation misapprehended our holding in *In re C.R.C.* In *In re C.R.C.*, the State petitioned for involuntary commitment of C.R.C. C.R.C. and his counsel appeared at the initial hearing. C.R.C. became distressed and left the hearing. As the district court was unable to determine C.R.C.'s preference for appointment of a friend prior to leaving the hearing, the court appointed a mental health caseworker who had previously worked with C.R.C. as friend and re-scheduled the initial hearing. C.R.C. refused to participate at the rescheduled initial hearing. Then, upon concurrence from the professional person and the court, the appointed friend together with C.R.C.'s attorney waived C.R.C.'s right to be physically present at the commitment hearing. *In re C.R.C.*, ¶¶ 3-9. *In re C.R.C.* did not authorize counsel for the alleged protected person to unilaterally seek waiver of that

8

person's right to physically appear at hearing, nor did it permit the District Court to approve the request upon making a record of the reasons.

¶12 The State acknowledges this Court and the U.S. Supreme Court have rejected the idea that, without an affirmative waiver on the record, a court must secure an individual's physical presence in court "by whatever means necessary[.]" *Illinois v. Allen*, 397 U.S. 337, 342, 90 S. Ct. 1057, 1060 (1970) (citation omitted); *In re L.K.*, 2008 MT 169, ¶¶ 32-33, 343 Mont. 366, 184 P.3d 353. Further, the State concedes that J.D.L.'s right to be physically present at his commitment hearing was not waived under § 53-21-119(1) or (2), MCA, as the State makes no argument that it was. Instead, the State advances, for the first time on appeal, a basis for forfeiture of appearance not specifically found in Montana's civil commitment statutes. The State acknowledges that "neither J.D.L.'s counsel nor the district court specifically referenced waiver by conduct or forfeiture" but then argues J.D.L. forfeited his right to be physically present by his conduct at MSH and the circumstances precluded the court from being able to prewarn J.D.L. that he could lose his right of presence through misconduct. In support of this waiver by forfeiture argument, the State cites to our decision in *In re L.K.*

¶13 In *In re L.K.*, we were called upon to determine if L.K.'s right to due process was violated when she appeared by video from MSH in Warm Springs for her commitment hearing and the district court, *after warning* L.K. her microphone would be muted if she continued to interrupt the proceedings, muted L.K.'s microphone. *In re L.K.*, ¶¶ 12-15. We quoted from *Illinois v. Allen*, which held "'that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he

9

continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.'" *In re L.K.*, ¶ 32 (quoting *Allen*, 397 U.S. at 343, 90 S. Ct. at 1060-61). We ultimately determined the district court did not violate L.K.'s due process rights by muting her microphone. *In re L.K.*, ¶ 33. *In re L.K.* does not authorize forfeiture by conduct and is not helpful to the State in this regard. Nor does it authorize respondent's counsel in a civil commitment proceeding to unilaterally waive the protected person's right to in-person appearance or permit the court to grant such a request by counsel.

¶14    In attempt to bolster its waiver by forfeiture argument, the State also cites criminal cases from New York where criminal defendants' rights to physical presence were forfeited, without prior warning given to the defendants, by the defendants' violent conduct *during* trial. We agree with J.D.L. that these extreme cases do not support forfeiture of personal appearance in a civil commitment case and, at best, illustrate how a criminal defendant's violent conduct during a court proceeding may justify excluding the defendant from the courtroom. Both cases cited by the State, *People v. Wilkins*, 822 N.Y.S.2d 271 (N.Y. App. Div. 2006) and *People v. Hendrix*, 883 N.Y.S.2d 534 (N.Y. App. Div. 2009), involved such conduct. In *Wilkins*, during the jury's announcement of its verdict, the defendant suddenly charged at the prosecutor. Several officers were injured in restraining the defendant. The defendant was then appropriately excluded from the courtroom for the remainder of the jury's verdict pronouncement. *Wilkins*, 822 N.Y.S.2d at 272-73. In *Hendrix*, the defendant along with his co-defendant were armed with homemade knives.

During trial, defendant jumped onto defense table and tried to advance toward the judge while the co-defendant attacked his own counsel. When intercepted by a court officer, the defendant tried to take the officer's firearm. After the defendant and co-defendant were subdued, the court declared a mistrial, and later precluded the defendant from physically attending the subsequent trial, instead ordering his participation through audio-visual communication. *Hendrix*, 883 N.Y.S.2d at 535.

¶15 The State basically asserts that because J.D.L. resisted involuntary administration of injected anti-psychotic medication and that it took several people to subdue him, hold him down, and administer the medication, he would exhibit similar conduct if transferred to a hearing he desired to attend in person. Given J.D.L.'s conduct with law enforcement and the court, we are not persuaded by this argument. J.D.L. was initially detained by law enforcement without incident for erratic, violent conduct. He then appeared for his initial hearing without exhibiting dangerous or violent behaviors. He did not exhibit any violent or concerning behaviors and expressed his desire to appear in person at his commitment hearing. When he was required to appear by video and expressed some minor disruption by indicating a desire to leave, after the court explained why it was important for him to remain, he did so without exhibiting violence or significantly disruptive behavior. The fact that he physically resisted the involuntary administration of anti-psychotic medication via injection does not per se establish he would pose significant threat to himself or others if permitted to be physically present at a hearing he desired to attend.

¶16 Adopting the State's forfeiture by conduct argument would, in essence, permit the State to defeat strict adherence to the statutory scheme governing involuntary commitments

11

contrary to our precedent. *In re S.E.*, ¶ 18; *In re N.A.*, ¶ 15; *In re F.S.*, ¶ 15; *In re S.D.*, 2018 MT 176, ¶ 8, 392 Mont. 116, 422 P.3d 122; *In re R.W.K.*, ¶ 18; *In re C.R.C*, ¶ 13. J.D.L.'s behavior was not inconsistent or unexpected of a person with a diagnosed mental health disorder of the severity to require civil commitment. Indeed, we expect erratic, unpredictable, and unconventional behaviors, like those exhibited by J.D.L., from individuals suffering from mental disorders. Exhibition of erratic, unpredictable, and unconventional behaviors is precisely the reason the civil commitment statutes provide for a means of waiving a respondent's right to be physically present at a hearing provided procedural safeguards are met. Those safeguards are specifically set forth in § 53-21-119 (2), MCA—the person's counsel and the friend of the respondent[6] acting together may waive physical appearance with concurrence of the professional person and the judge upon facts supporting "the presence of the respondent . . . would be likely to seriously adversely affect the respondent's mental condition" and "an alternate location . . . would not prevent the adverse effects on the respondent's mental condition." Section 53-21-119(2), MCA.

¶17     Here, the statutory requirements for waiver of physical presence at the commitment hearing were not met. J.D.L.'s counsel did not act with the friend of respondent, as none

---

[6] It is also noted that at the initial appearance the District Court should have considered appointing a "friend of respondent"—defined as "any person willing and able to assist a person . . . alleged to be suffering from a mental disorder and requiring commitment"—even though J.D.L. had not provided the name of a friend. Section 53-21-102(8), MCA. There is no preclusion on a district court to appoint a friend of respondent when the respondent has not identified a person to serve as such. This would have permitted the friend to consult with J.D.L.'s counsel to determine the appropriateness of seeking waiver of J.D.L.'s personal appearance at the commitment hearing. Although such did not occur here, we recognize counsel did not assist the court in this regard by failing to request appointment of a friend.

was appointed, nor did the District Court find physical appearance would be likely to seriously adversely affect J.D.L.'s mental condition. Additionally, no evidence was presented that the District Court even considered an alternate location for the hearing as required by § 53-21-119(2)(a)(ii), MCA.

¶18 In rebuttal to the State's newly advanced forfeiture argument, J.D.L. asserts that to adopt the State's forfeiture argument, this Court would have to disregard controlling statutes and depart from this Court's longstanding precedent. The cases cited by the State are inapposite to the case at hand and simply inapplicable. As discussed above, we agree and decline to adopt forfeiture by conduct under the circumstances of this case.

## CONCLUSION

¶19 The District Court committed reversible error by waiving J.D.L.'s right to physically appear and instead requiring J.D.L. to attend, over objection, his own commitment hearing via two-way electronic audio-video communication.

¶20 Reversed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR

Justice Beth Baker, specially concurring.

¶21 When a respondent's counsel acquiesces in the trial court's failure to adhere to a statutory requirement during an involuntary commitment proceeding, we may affirm the

13

commitment if the error "[does] not prejudice [the respondent's] ability to defend against allegations contained in the petition" or otherwise result in substantial prejudice. *See In re M.K.S.*, 2015 MT 146, ¶ 20, 379 Mont. 293, 350 P.3d 27; *In re B.H.*, ¶¶ 22-23; *In re N.A.*, ¶¶ 21-25; *In re O.R.B.*, 2008 MT 301, ¶¶ 30-31, 345 Mont. 516, 191 P.3d 482. We thus apply the plain-error doctrine to consider unpreserved error, "weighing the risk of depriving of an individual's liberty against the probable value of the procedure in question." *In re N.A.*, ¶ 23; *see In re M.K.S.*, ¶ 18; *In re B.H.*, ¶ 17; *In re B.O.T.*, 2015 MT 40, ¶ 22, 378 Mont. 198, 342 P.3d 981. In such cases, the respondent bears the burden to establish that failure to review the alleged error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *In re M.K.S.*, ¶¶ 13-14.

¶22 Here, J.D.L.'s attorney requested to waive J.D.L.'s personal presence at the commitment hearing in favor of having him appear from MSH by two-way video. The State, however, does not argue that we should review J.D.L.'s appeal under the plain-error standard, but argues only that J.D.L. forfeited his right to demand his physical presence through his violent conduct. I agree with the Court's rejection of this argument and therefore concur in its decision without considering whether plain-error review would lead to the same conclusion.

/S/ BETH BAKER

Justice Jim Rice joins the Special Concurrence of Justice Beth Baker.

/S/ JIM RICE

14